HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

QUENTIN REAUME,

    Plaintiff,

v.

UNITED STATES DEPARTMENT OF
AGRICULTURE FOREST SERVICE,

    Defendant.

CASE NO. 3:18-CV-05032-RBL

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT FOR
DEFENDANT

## INTRODUCTION

THIS MATTER is before the Court on Defendant United States Department of Agriculture Forest Service's Motion for Summary Judgment.[1] Plaintiff Quentin Reaume was an employee of a subcontractor hired to cut trees on Forest Service land and was injured when a dead tree (called a "snag") fell on his foot. He seeks to hold the Forest Service liable for his injury because it allegedly refused to allow loggers like Reaume to cut down such hazardous trees located on the boundary of the timber sale area.

---

[1] Defendant filed a Motion to Dismiss or for Summary Judgment. The Court will treat this Motion as a Motion for Summary Judgment and consider the evidence on record.

Forest Service argues that it cannot be liable for Reaume's injury because it owed no duty to Reaume. Forest Service contends that as an employee of a subcontractor, Reaume was owed no duty because Forest Service did not retain control over safety and on-site operation at Reaume's worksite. Forest Service also argues that it owed no duty to Reaume as an invitee because Reaume did not encounter a latent danger and Forest Service had no reason to expect Reaume would be harmed. Reaume did not respond to Forest Service's Motion.

For the following reasons, Forest Service's Motion for Summary Judgment is GRANTED.

## BACKGROUND

The United States, through Defendant Forest Service, awarded a timber sale to Gamble Bay Timber and Construction Inc. Forest Service and Gamble Bay agreed that Gamble Bay was to purchase, cut, and remove timber that was marked in orange paint in the sale area. The contract also states that Gamble Bay was to assume "all responsibility for compliance with safety requirements" for its employees. In addition to the timber sale contract, Forest Service and Gamble Bay also entered an agreement that authorized Gamble Bay to cut additional trees in the sale area for safety or operational reasons.

Gamble Bay then contracted with Fugarwee Timber Inc. to cut the timber. Plaintiff Quentin Reaume was an employee of Fugarwee Timber Inc. Prior to Reaume cutting trees in the sale area, Reaume's employer allegedly notified the contracting officer from Forest Service, Jana Carlson, that "additional hazardous trees" needed to be cut to avoid the hazard posed by snags that could fall on workers. Reaume alleges that the only way to avoid the snag hazard was to cut the additional boundary trees.

1     Reaume's Complaint states that Carlson did not authorize additional cutting. She also allegedly informed Reaume's employer that it would be in breach of their contract if additional trees were cut. Reaume claims that after Carlson's refusal to permit additional cutting, Reaume continued his work in the area that remained dangerous. He was then struck in the foot by a falling snag on the boundary of the work area.

    The contract between Forest Service and Gamble Bay states that boundary trees outside of the sale area shall not be cut. It also states that "if logging safety is jeopardized, snags may be felled and then left in the stand." The Department of Labor and Industries documentation indicates that Reaume's management at Fugarwee had been told by Forest Service that Fugarwee workers could cut down snags that posed a threat to safety, although they also may have understood the contract to prohibit cutting boundary trees.

    Reaume filed this action under the Federal Tort Claims Act in January of 2018. The Complaint claims that Reaume's foot injury was a proximate result of Forest Service's negligence, although it does not explain exactly what this negligence consisted of. Reaume claims that Forest Service failed its duty to protect him, focusing on the allegation that Forest Service had a contractual right to authorize additional cutting but declined to do so.

<b>DISCUSSION</b>

**1. Legal Standard**

    Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson Liberty*

*Lobby, Inc*., 477 U.S. 242, 248-50 (1986) (emphasis added); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323-24.

There is no requirement that the moving party negate elements of the non-movant's case. *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990). Once the moving party has met its burden, the non-movant must then produce concrete evidence, without merely relying on allegations in the pleadings, that there remain genuine factual issues. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**2. Federal Tort Claim Act**

Under the Federal Tort Claims Act, the defendant is liable in the "same manner and to the same extent as a private individual under like circumstances . . . ." 28 U.S.C. § 2674. Because the injury in this case occurred in the State of Washington, Washington law applies. *See* 28 U.S.C. § 1346(b); *McCall v. U.S. Dept' of Energy*, 914 F.2d 191, 193 (9th Cir. 1990).

a.  *Forest Service's Duty to Reaume based on Retained Control*

Forest Service argues that it did not owe Reaume a duty to keep the workplace safe because its contract assigned all responsibility for ensuring safety to the purchaser, Gamble Bay. The contract also delegated the authority to remove trees for operational or safety hazards to Gamble Bay. Reaume makes no argument in response.

Generally, a principal who hires an independent contractor has no duty to protect that contractor's employees. *Hennig v. Crosby Group, Inc.*, 116 Wash.2d 131, 134 (1991). An exception to this rule applies if the principal retains control over the manner in which work is performed, in which case the principal has a duty to keep the common work areas safe. *Kamla v. Space Needle Corp.*, 147 Wash.2d 114, 119-21 (2002). In *Afoa v. Port of Seattle*, the Washington Supreme Court held that the duty to keep a safe workplace can be imposed "irrespective of the precise definition of the contractual relationship between the parties." 176 Wash.2d 460, 476-78 (2013). Thus, an entity that retained control over "some part of the work" could owe duty of care to all workers at the jobsite, whether that entity is a general contractor, jobsite owner, or licensor. *See id*.

To determine whether the principal retained control of its contractor's work, courts may consider the parties' contract, the parties' conduct, and other factors. *Phillips v. Kaiser Aluminum*, 74 Wash.App. 741, 750 (1994). Contract language does not dictate the outcome if the principal's intent to retain control can be established through the parties' conduct. *Weimer v. U.S.*, No. 96-35880, 2005 WL 2709572 (9th Cir. December 11, 1997) (citing *Phillips*, 74 Wash.App at 750).

Regardless of how plaintiffs go about establishing the existence of control, Washington courts require them to meet a rigorous standard. The Washington Supreme Court held in *Hennig*

that to establish retained control, the plaintiff had to show that the principal had the right to involve itself in the *performance* of the work, not merely the right to oversee compliance with the contract. 116 Wash.2d at 134. Because the principal in *Hennig* did not actively supervise the contractor's employees, did not furnish the defective shackle that caused the plaintiff's injury, and did nothing else to affirmatively increase the risk, the principal was not found liable. *Id*. A similarly rigorous standard was applied in *Bozung v. Condominium Builders Inc.*, where the court did not find the principal liable because, even though it had "the right to order the work stopped or to control the order of the work," none of that meant the principal controlled the *method* of the subcontractor's work. 42 Wash.App. 442, 447 (1985).

Washington courts have found retained control in cases where the principal unambiguously took charge of specific aspects of the plaintiff's work. In *Phillips*, the court found the principal liable because it had directed the independent contractor's employees to perform the work with chain saws, routinely gave the employees safety directions, and conducted meetings each morning to address safety issues. 74 Wash.App. at 752-53. In *Kelly v. Howard S. Wright Const. Co.*, the principal affirmatively assumed "sole responsibility for supervising and coordinating all aspects of the work" and required the plaintiffs to use a specific kind of net as safety precaution. 90 Wash.2d 323 (1978).

Here, although a closer question than some other cases, Reaume has not established that Forest Service owed him a duty based on retained control because he did not submit sufficient evidence showing that Forest Service controlled the method of his work. Unlike the plaintiff in *Phillips*, Reaume does not suggest that Forest Service had the authority to direct him or his employer on what kind of tools to use, nor does he allege that Forest Service demonstrated active involvement in other ways. *See id*. Reaume submitted no evidence to show that Forest Service

actually rejected Fugarwee's request to cut additional boundary trees, but even if it did, such an action is distinguishable from controlling the *method* of Reaume's work. *See Bozung*, 42 Wash.App. at 447. Like *Hennig*, where the principal merely retained the right to ensure contract compliance, Forest Service allegedly rejected the request to cut boundary trees because they were outside the area of timber sold to Gamble Bay. *See Hennig*, 116 Wash.2d at 134. Thus, even if Reaume submitted evidence to show that Forest Service denied additional cutting, its denial would be categorized as merely ensuring compliance with the contract and would not establish retained control.

b.  *Forest Service's Duty to Reaume as an Invitee*

Forest Service first argues that it did not owe a duty to Reaume as an invitee because the snag hazard was not a latent danger. Second, Forest Service argues that even under the exception to the rule that the danger must be latent, it owed no duty to Reaume because it could not have foreseen that Reaume and his employer would continue to work near the snags that they knew was hazardous. Again, Reaume is silent in opposition.

In general, a landowner owes an invitee a duty to protect against latent defects on their property but not known or obvious dangers. *Tincani v. Inland Empire Zoological Soc.*, 124 Wash.2d 121, 139 (1994). However, a landowner could owe a duty to "warn of, or make safe, a known or obvious danger" if a landowner "has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable [person] in [that] position the advantages of doing so would outweigh the apparent risk." *Id* at 139-40.

Here, Reaume does not allege he was harmed by a latent danger and has not submitted sufficient evidence to show that Forest Service owed him a duty regarding a known or obvious danger. *See Kamla*, 147 Wash.2d at 126. There is no evidence in the record showing that Forest

Service actually denied the request to cut the hazardous trees or even knew about the hazardous trees near the worksite. There was a possible ambiguity in the contract, which states that snags might be felled "if logging safety is jeopardized" but that "[b]oundary trees shall not be cut," without explaining what to do when there is a boundary tree jeopardizing safety. However, there is no evidence that Reaume and his employer were confused by the contract or told Forest Service that they understood it to mean they could not cut down snags along the boundary. Absent such evidence, a finder of fact could not conclude that Forest Service had reason to expect Fugarwee's workers would risk their lives rather than seek to resolve a contractual ambiguity. Forest Service thus owed no duty to Reaume as an invitee.

c. *Forest Service's Non-Delegable Duty*

If an independent contractor's work involves inherently dangerous activities, the principal may owe a non-delegable duty to third persons. The class of third persons includes members of the public or someone unconnected to the activity in any way. *Epperly v. City of Seattle*, 65 Wash.2d 777, 781 (1965). It does not include employees of an independent contractor whose work involves the inherently dangerous activity. *Id.* at 183; *see also Tauscher v. Puget Sound Power and Light Co.*, 96 Wash.2d 274 (1981). Thus, employees of an independent contractor cannot recover from the principal by citing the inherently dangerous activity doctrine. *Epperly*, 65 Wash.2d at 782-83.

Here, Forest Service did not owe Reaume the non-delegable duty to keep him safe because Reaume was an employee of an independent contractor, which is not included in the class of third persons protected under Washington law. *Id*. Thus, Reaume cannot recover based on the inherently dangerous activity doctrine.

## CONCLUSION

For the above reasons, Defendant Forest Service's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.

Dated this 11th day of June.

*Ronald B. Leighton*
Ronald B. Leighton
United States District Judge